IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VICKI L. B.[1],                                                        Case No. 3:25-cv-00618-JR

        Plaintiff,                                                 OPINION AND ORDER

      v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

RUSSO, Magistrate Judge:

Plaintiff Vicki B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits and Social Security Income under the Social Security Act. For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in 1987, plaintiff alleges disability beginning April 1, 2018,[2] due to "neck surgery, sciatica, GI issues, carpal tunnel, fibro, rotator cuff injury, anxiety, PTSD, depression, [and] OCD." Tr. 251, 414. Her claims were denied initially and upon reconsideration. On April 18, 2024, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 43-86. On June 7, 2024, the ALJ issued a decision finding plaintiff not disabled. Tr. 10-30. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ determined the following impairments were medically determinable and severe: "cervical degenerative disc disease, degenerative joint disease of the right shoulder, bilateral carpal tunnel syndrome, conversion disorder/psychogenic nonepileptic seizures, posttraumatic stress disorder, anxiety, depression, and personality disorder." Tr. 13. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 15.

Because she did not establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform sedentary work except:

> [She] can lift and carry, push and pull 10 pounds occasionally and 5 pounds frequently; can stand and walk for 2 hours of an 8 hour day with standard breaks; can sit for 6 hours of an 8 hour work day with standard breaks; can occasionally stoop, climb ramps and stairs,

---

[2] Plaintiff previously applied for, and was denied, Disability Insurance Benefits on December 29, 2020, at the initial level. Tr. 410-11.

Page 2 – OPINION AND ORDER

kneel, crawl, and crouch; can never climb ladders, ropes, or scaffolds; and can never balance, as that term is used in the Department of Labor's Selected Characteristics of Occupations. She must never be exposed to open water, open heat sources, unprotected heights, or dangerous, unprotected machinery. She can frequently reach, handle, and finger. She can understand, remember, and carry out simple tasks; can make simple work-related decisions; can have occasional work-related interactions with coworkers, supervisors, and the general public; and can have occasional changes in the work setting.

Tr. 18.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 28. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite her impairments. Tr. 29.

## DISCUSSION

This case hinges exclusively on the ALJ's step five finding. Specifically, plaintiff argues the ALJ erred by failing "to inquire and resolve the conflict between" the job numbers provided by the VE and counsel. Pl.'s Opening Br. 7 (doc. 9).

At step five, an ALJ bears the burden of "providing evidence that demonstrates that other work exists in significant numbers in the national economy that [a claimant] can do." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). "Given its inherent reliability, a qualified [VE's] testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Ford v. Saul*, 950 F.3d 1141, 1060 (9th Cir. 2020).

In order to preserve the issue for appeal, the claimant must "raise the job-numbers issue in a general sense before the ALJ." *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017). If the ALJ then declines to "permit the claimant to submit supplemental briefing," the claimant "may raise new evidence casting doubt on a VE's job estimates before the Appeals Council, provided that evidence is both relevant and relates to the period on or before the ALJ's decision." *Id.*

Page 3 – OPINION AND ORDER

(citation and internal quotations omitted). To " determine whether the ALJ had a duty to address a conflict in job-number evidence (and failed to discharge that duty), [the court must] consider on a case-by-case basis whether new evidence submitted by a claimant . . . has 'significant probative' value." *Wischmann v. Kijakazi*, 68 F.4th 498, 506 (9th Cir. 2023) (quoting *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022)).

Here, the VE testified that a hypothetical individual with plaintiff's vocational factors and RFC could perform three representative occupations: final assembler, Dictionary of Occupational Titles ("DOT") # 713.6687-018, with 18,000 national jobs; lens inserter, DOT # 713.687-026, with 18,000 national jobs; and printed circuit board screener, DOT # 726.684-110, with 16,000 national jobs. Tr. 76. Plaintiff's counsel did not inquire as to the source of the VE's testimony, in part because the ALJ asked "what is the source of your information regarding job numbers?" Tr. 84. The VE responded: "My job numbers are based on the Department of Labor Bureau of Labor Statistics. I do use the Occu Browse program by SkillTRAN. However, I still have to do my own independent computations for the numbers and so, it is an average or an estimate of numbers. There is no specific job numbers for each DOT code." *Id.*

Plaintiff subsequently submitted evidence to the Appeals Council – namely, several printouts from SkillTRAN's Job Browser Pro showing drastically reduced numbers associated with the representative occupations. Tr. 501-09. Plaintiff's counsel also submitted a letter with a "walkthrough to demonstrate the process" of how his Job Browser Pro numbers were generated (basically establishing that he entered each DOT code online, and clicked "employment numbers" and then "DOT employment estimate"). Tr. 510-14.

As such, the question before the Court is whether contradictory evidence proffered to the Appeals Council from one of the same sources relied on by the VE concerning the incidence of

Page 4 – OPINION AND ORDER

jobs is sufficient to undermine the ALJ's step five finding. In *Wischmann*, the claimant's attorney submitted a "letter . . . and the six pages of printouts" from Job Browser Pro showing the available job numbers were significantly lower than what the VE had testified to at the hearing. *Wischmann, 68 F.4th at 506*. The Ninth Circuit found that this evidence did not qualify "as significant probative evidence" sufficient to warrant remand. *Id.* In particular, the Ninth Circuit explained:

> The letter states only that Job Browser Pro produced a lower number of positions available nationally . . . the letter provides no information about how the job numbers were produced, other than the name of the software program used. A software program, however, is merely a tool that must be used appropriately to produce reliable results. Given that SkillTRAN's Job Browser Pro software is meant to assist a VE in performing a complex matching exercise of various sources of information from official and private sources, experience in using the program and interpreting the output would ordinarily be necessary to produce probative results. [And an] attorney . . . has no identified expertise in calculating job figures in the national economy. Nor does the letter establish that the attorney replicated a methodology that was set forth by the VE at the hearing. In addition, the letter provides no information about what queries were entered into the computer program, what variables were changed, or what filters were applied to the data. Nor does the letter state which version of the program was used, so we do not know whether the information used by the program was current or out of date.

*Id.* at 507 (internal citations and quotations omitted). Relatedly, the Ninth Circuit denoted the raw data provided by counsel's printouts was "not comprehensible to a lay person, and [the claimant did] not provide the interpretation necessary to make the pages meaningful." *See id.* ("uninterpreted data is not probative" and "an ALJ need not discuss evidence from a lay witness that the lay witness is not competent to provide").

The majority of decisions interpreting *Wischmann* from this District have concluded that counsel's use of Job Browser Pro printouts to establish step five discrepancies does not warrant remand, emphasizing that the software is but one of many sources used by the VE to generate job number estimates. *See, e.g., Daniele P. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1928747, *3 (D. Or. May 1, 2024); *see also Brian J. v. Comm'r, Soc. Sec. Admin.*, 2024 WL 4215646, *9 (D. Or.

Page 5 – OPINION AND ORDER

Sept. 17, 2024) ("ten pages of Job Browser Pro data plaintiff's counsel submitted to the Appeals Council" was not "significant and probative" because it was "raw and uninterpreted"). Even where the plaintiff does submit probative and significant counter evidence from a separately obtained vocational consultant, this District has concluded that the ALJ may still rely on the VE's numbers and expertise, provided that reliance is based on a reasonable interpretation of the record. *Rachel W. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 5505874, *5 (D. Or. April 9, 2024), *aff'd*, 2025 WL 999478 (9th Cir. Apr. 3, 2025).

The same is true here. Plaintiff's counsel provided a letter to the Appeals Council, along with several pages of printouts from Job Browser Pro. Although counsel provided an explanation of how those numbers were generated (notably, by using a basic search function), he provided no basis for establishing that someone with job number or vocational expertise produced or interpreted the results. In other words, there is no indication that plaintiff's counsel followed the VE's methodology. Likewise, the printouts provided by plaintiff's counsel contain raw data with no explanation for the multitude of complex acronyms, percentages and totals that are listed. It is also not clear whether counsel's estimates are from the relevant time period, insofar as plaintiff's printouts appear to reflect job availability through 2022 (i.e., approximately two years before the ALJ hearing and decision), using data from as far back as 2017. *See, e.g.*, Tr. 504-12.[3]

In sum, plaintiff's evidence is neither probative nor significant under *Wischman* or District precedent and therefore substantial evidence supports the ALJ's step five finding.

---

[3] The Court also notes that, while this data is unclear precisely because it is raw and uninterpreted, it does appear that counsel's query generated higher – indeed, significant – numbers associated with the representative occupations based on the Bureau of Labor Statistics employment estimates. Tr. 508-09.

Page 6 – OPINION AND ORDER

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 18th day of February, 2026.


                                        /s/ Jolie A. Russo
                                          Jolie A. Russo
                                  United States Magistrate Judge